### DANIEL WARNER, Appellant, *v.* JAMES H. WARREN, Respondent.

Where a husband, with a fraudulent intent, obtained from his wife a power of attorney, authorizing him to do business in her name and as her agent, and after having by false and fraudulent statements established a fictitious credit, by means whereof he obtained, upon credit, large amounts of goods, a portion of which he sold in the original package at less than cost, and then induced his wife to make an assignment, the wife having no knowledge of the fraudulent intent.—*Held*, that the wife is chargeable with knowledge of the fraudulent scheme of her agent, the husband, and the assignment is void. (GROVER, J., FOLGER and RAPALLO, JJ., concurring.)

In an action brought by the assignee against a sheriff, who had taken the assigned property upon attachment against the wife.—*Held*, that the declarations of the husband, disconnected with any act of his, as agent, made in the absence of the wife, were not competent evidence.

(Argued September 8th, 1871; decided September 11th, 1871.)

APPEAL from judgment of the late General Term of the seventh judicial district, affirming judgment entered in Monroe county upon report of a referee in favor of plaintiff.

This is an action of replevin, brought by plaintiff as assignee of Mary A. Gilman against the sheriff of Monroe county, who had taken the assigned property upon an attachment found against the assignor.

In 1860, Thomas C. Gilman, residing in Rochester, having been then recently discharged from his debts under the insolvent laws of this State, formed a plan to engage in the business of a boot and shoe dealer in said city in the name of his wife; and after establishing a credit in New York and Boston, and purchasing on the strength of it, to assign the property in his hands so as to defraud creditors.

Accordingly, he procured from his wife, Mary A. Gilman, a power of attorney, reciting that she was about to engage in said business, in Rochester, and constituting him her agent and attorney, with general power to conduct the business for her and in her name. Mrs. Gilman had no property or other means; and her husband, before making any purchase, borrowed $10,000 with her knowledge. At different times in 1861 and 1862, Gilman, by false representations as to the pecuniary circumstances of Mrs. Gilman, induced dealers in New York and Boston to sell her boots and shoes, to a large amount, on credit, so that in November, 1862, she owed on that account to the firm of Claflin, Mellin & Co., of New York, $6,278.55; and to H. L. Daggett & Co., of Boston, over $1,800. Some of the goods bought in November, 1862, Gilman sent to Elmira and Buffalo, in the original cases, and caused them to be disposed of there, for his benefit to over $800, cost prices, and he used the avails. Mrs. Gilman in no manner superintended or controlled the business, except by giving her husband the power of attorney; and in that act as in all others pertaining to the business, she was used by her husband to defraud said creditors. On the 25th November, 1862, Mrs. Gilman, at the instance of her husband, made an assignment to the plaintiff, in trust, to pay her creditors, containing preferen-

ces. The assignment was not, in any respect, directed or controlled by Mrs. Gilman, except that she expressed a wish that her mother should be preferred as a creditor, which was done. The referee found that Mrs. Gilman intended no wrong, but she was a passive instrument in the hands of her husband, whereby the creditors from whom said stock was purchased were defrauded.

The stock in trade included in the assignment was, on the 11th December, 1862, seized by the defendant as sheriff of the county of Monroe, by virtue of an attachment issued out of the Supreme Court, in an action brought by said Claflin, Mellen & Co. against Mrs. Gilman.

Upon the trial of the action, Lewis Selye, a witness for defendant, was asked to give conversation had with the husband, Thomas C. Gilman, in the spring of 1861, before the opening of the store and while it was being fitted up. This was objected to by plaintiff as incompetent and immaterial. Objection overruled and plaintiff excepted. The witness swore, in substance, that the husband stated, he did not expect to make money legitimately out of the business, but to establish a credit, and at the proper time to fail and divide the profits.

*W. F. Cogswell*, for appellant. The assignment not void as to creditors by reason of fraudulent intent of agent. (*Babcock* v. *Eckler*, 24 N. Y., 623, 631; *Wilson* v. *Forsyth*, 24 Barbour, 105, 120, 128; *Kavanaugh* v. *Beckwith*, 44 Barbour, 192, since affirmed in the Commission of Appeals.)

*George F. Danforth*, for respondent. The principal is liable for the fraud of her agent, although perpetrated without her knowledge or consent. (*Sandford* v. *Handy*, 23 Wend., 260; *Nelson* v. *Cowing*, 6 Hill, 336; *Bennett* v. *Judson*, 21 N. Y., 238; *Elwell* v. *Chamberlin*, 31 N. Y., 619; 1 Parsons on Contracts, vol. 1, p. 62, § 9; *Hern* v. *Nichols*, 1 Salk, 289; *Fitzsimmons* v. *Joslin*, 21 Verm., 129; *Jefferey* v. *Bigelow*, 13 Wend., 518; *Huguenin* v. *Baseley*, 14 Vesey, 289;

1 Sch. & Lef., 209–222.) The principal is chargeable with knowledge, and deemed to have assented to the fraud. (*Hough* v. *Richardson*, 3 Story Rep., 660; *Kennedy* v. *Greene*, 3 Mylne and Keene, 699, 10 vol., Eng. Ch. Reports, p. 370; *Patten* v. *Insurance Co.*, 40 N. H., 375; *Lewis* v. *Chapman*, 3 Beavan, 132; *Lewis* v. *Chapman*, Eng. Ch. Rep., vol. 43, pp. 132–134; *Williamson* v. *Brown*, 15 N. Y., 359.) The assignment was fraudulent and void. (Dunlop's Polegon Agency, 51, 62; *Durant* v. *Elliott*, 1 B. & P., 3; *Farm* v. *Russell*, 1 B. & P., 296; Burge Suretyship, 215, 229; *Robson* v. *Colse*, 1 Douglas, 277; *Graham* v. *Stark*, 3 Bankrupt Reg., 92.)

GROVER, J. The difference between the counsel, as to the validity of the assignment of Mrs. Gilman to the plaintiff, under which he claims title to the property in controversy, arises principally upon the different construction put upon the report of the learned referee. The counsel for the appellant construes it as finding, that the assignment was executed by Mrs. Gilman in good faith, without any intent to hinder, delay and defraud her creditors, with a further finding that her husband and agent, Thomas C. Gilman, had a fraudulent design to defraud her creditors, and that prompted by such a motive, he advised her to execute it; from which a legal conclusion was drawn by the referee, that although Mrs. Gilman's intentions were, fairly and honestly, to appropriate the property to the payment of her debts, yet the assignment is fraudulent and void, on account of the fraudulent designs of her husband. If this is the true construction of the report, the judgment cannot be sustained. The assignment is the act and deed of Mrs. Gilman, executed by her personally, and, so far as its validity depends upon the intention with which it was executed, it must be her intention, and not that of a person not a party thereto. The counsel for the respondent insists, that the fair construction of the report shows that the referee found that she executed the assignment, to enable her husband and agent, to consummate any object designed by him,

and with no other intent or purpose on her part, and that his design in causing her to execute it, appearing to have been to defraud her creditors, that such was the intent with which she executed, although ignorant of the design of her husband in requiring its execution by her. If this is the true construction, the legal conclusion, that it was fraudulent and void as to the creditors, was correct. If the construction is doubtful, that should be adopted, that will sustain, rather than one requiring a reversal of the judgment. The finding, in substance, is that in the latter part of 1860, or the forepart of 1861, Gilman formed a design to engage in the business of a boot and shoe dealer, at Rochester, not with a view of carrying on a legitimate business, but of establishing a fictitious credit, and purchasing, upon such credit, goods in New York and Boston, and then make an assignment to defraud the creditors; that he finally concluded to carry on the business in the name of his wife; that to enable him so to do, he procured from his wife a power of attorney, authorizing him to use her name and act as her agent, in carrying on the business of a boot and shoe dealer, both in making purchases and sales, and in all respects to manage and conduct the business; that neither Gilman nor his wife had any property whatever; that to enable him to establish a credit, $10,000 was borrowed of one Baker, for which no security whatever was given, except Mrs. Gilman, shortly thereafter, executed to the lender, papers authorizing the entry of a judgment against her for the amount, but upon which no judgment was ever entered; that after obtaining this money, Gilman proceeded to New York and Boston, and by false and fraudulent representations, succeeded in purchasing goods, partly for cash and partly for credit, from time to time increasing his indebtedness in New York and Boston generally, until October and November, 1862, when, by continuing his false and fraudulent statements, he made still larger purchases upon credit in New York and Boston, and having succeeded in effecting such purchases, proceeded to dispose of a portion of the goods so purchased, in the original packages, at Elmira and Buffalo, at less than

cost, and after effecting such sales, induced his wife, Mrs. Gilman, to execute an assignment to the plaintiff, embracing the property in question, with what debts might be due to her, to the plaintiff, in trust for the payment of her debts, giving a preference first to her mother as indorser of notes for her, and after such notes were paid, a preference to Baker, intended to secure the payment of the loan with which Gilman was enabled to start upon this career. The referee has not found, that Baker made the loan with intent to enable Gilman to create a fictitious credit, and thus be able to procure the goods which were afterward assigned to secure him, or that he was to participate in the fruit of the fraud, and, therefore, we cannot assume that the assignment was found fraudulent upon this ground. The referee has found that, in all this business, Mrs. Gilman was a guiltless, artless woman, who did not, in any manner, take charge of, or in any way, superintend or control, said business, and did not, in fact, intend to commit any wrong, but was a passive instrument in the hands of her husband, by whom the frauds were perpetrated, and who designed, by the assignment, to consummate the same. Mrs. Gilman may have been, and from the finding, it must be assumed that she was, guiltless, in a moral sense, from having acted under the marital control of her husband, ignorantly and without inquiry having executed any paper, or done any other act connected with the business, with no motive or intention, except to enable him to accomplish whatever purpose he chose, as her agent; but in a legal sense, for civil purposes, it is quite different. His objects became hers; his frauds were her frauds; and she is responsible therefor, however destitute of any knowledge thereof. While recent legislation has placed married women, for business purposes, in the same position as if sole, it has, in this respect, given them no additional advantages. While they may carry on business on their separate account, and employ their husbands as agents therein, if they do, they become legally liable for the acts of such agents, the same as though the marital relation did not exist. If they execute papers for

the mere purpose of enabling the husband to accomplish some purpose of his own, that purpose becomes the intention of the paper, although no inquiry is made or knowledge obtained as to such design. That would be so as to any principal, who was a mere passive instrument in the hands of an agent, having no motive or intention of his own in doing the act. Indeed, in such cases, it would seem that the act, in most cases, would be the act of the agent, and that he would be liable therefor as principal, as Gilman undoubtedly would have been, in the present case, had the vendors sought to charge him as such; but when, as in the present case, Mrs. Gilman is charged as principal, her assignment, made to defraud her creditors, cannot be upheld, because she did not know of its purpose and the use to be made of it, while executing it as the passive instrument of her husband, without any intention on her part, except to enable him to effect his own purposes, which were to defraud the creditors. The findings of the referee are sustained by the proof of the acts of Gilman, and his declarations accompanying the same. The fact that neither had any property whatever. The loan procured from Baker without any security, and the use made of the money in establishing a fictitious credit. The preference given to him by the assignment, which was an uncontroverted fact. It is only by the assumption, that Mrs. Gilman was a mere automaton in respect to the entire business that she can be excused, in a moral view, from the guilt of participating in the entire fraudulent scheme. She cannot be so excused in a legal view. The judgment must be affirmed, unless some of the exceptions taken to the rulings of the referee by the appellant were well taken. The defendant introduced Lewis Selye, who testified that he had two conversations with Gilman in the spring of 1861; one before the store was opened and one while the store was fitting up; and the defendant's counsel asked what he said. The plaintiff's counsel objected to the testimony as incompetent and immaterial. The referee overruled the objection, to which the plaintiff's counsel excepted. In considering this exception it must be borne in

mind, that the defendant was justifying the taking of the property, upon process against Mrs. Gilman sued out to collect her debt, under whom the plaintiff made title by her assignment to him, in trust, for her creditors. Thus it was assumed by both parties that Mrs. Gilman had had title to the property. The evidence showed, that she acquired title by purchase made by her husband as her agent for her, while solely conducting the business as such agent. The objection overruled, was to proof of what was said in the conversations including both. If therefore, what was said in either was competent, the objection was too general, and the exception to the ruling thereon cannot be sustained. The first conversation was before anything had been done in the business, and clearly inadmissible against the plaintiff, to defeat his title acquired from Mrs. Gilman. The second was while the store was fitting up for the business, but had no connection with any act done in relation to the business or any other act. It was the mere declaration of Gilman, disconnected with any act; and as such, not admissible against his wife or one claiming title by assignment from her. The rule that the declarations of an agent, made while doing no act for his principal, are not competent evidence against the principal, is elementary, and needs only to be stated. It is equally clear that the declarations of a husband in the absence of the wife, are not competent evidence against the wife, or one claiming title under her. Selye, under the ruling, gave material evidence, if the declarations were competent, in favor of the defendant. The referee held the testimony competent, and it must, therefore, be presumed that he considered it in determining the case. The ground of the objection was sufficient to raise the question as to the competency of the evidence. We cannot say that the other testimony, so conclusively established the facts found by the referee, that it would have been a legal error to have found the other way. To do this, the evidence must be, so conclusive, that if the cause had been tried by jury, it would have been the duty of the judge to direct a verdict, and error to submit the question to the jury. The plaintiff

may have been prejudiced by the testimony; and as it was not competent, the judgment must be reversed and a new trial ordered. Costs to abide event.

FOLGER and RAPALLO, JJ., concur.

C. J. ALLEN and PECKHAM, JJ., concur in result for error in the admission of evidence, expressing no opinion on other questions.

Judgment reversed.