By the Court.—Freedman, J.
The most important question which presents itself at the very threshold of this case, relates to the extent of the power possessed by George A. Wicks, as the agent of the plaintiff. The fact that he was, and is, the husband of the plaintiff, is immaterial. A married woman who carries on a business for profit, and employs her husband as her agent, to manage it, is legally liable for the acts of such agent, the same as though the marital relation did not exist (Warner v. Warren, 46 N. Y., 228).
The power was conferred by a written instrument, appointing him as her attorney “to buy, sell, assign and transfer in his discretion, gold, stocks and bonds, and to draw, execute, sign and deliver for me and in my name, all orders, checks, or other instruments in writing whatsoever, which shall or may in his discretion be necessary in the conducting, carrying on and transacting the business of buying and selling gold, stocks and bonds, on speculation or otherwise, giving and granting unto my said attorney full power and authority to do and perform all and every act and thing whatsoever requisite and necessary to be done in and about the premises, as fully to all intents and purposes as I might or could do if personally present, with full power of substitution and revocation, hereby ratifying,” &c.
It bears date July 31, 1869, and consequently was executed by the plaintiff after an experience of nearly three months in the hazardous business in which she had embarked. For the evidence shows that the first *111 account of the plaintiff with the defendants was opened on April 2, 1869, and closed on May 26 following, by defendants’ giving to Mr. Wicks a check to the order of the plaintiff for about forty-five thousand dollars, and that a second account was opened by her on June 12, 1869, by a deposit of sixty thousand dollars, as security for such orders as she might thereafter give.
The defendants may well insist, therefore, that the power thus given should be construed, as against them, with reference to the nature and usages of the business to which it related. These usually involved the employment of brokers. The defendants were employed as such, and the power of attorney executed by the plaintiff was placed into their hands. As such brokers the defendants, pursuant to directions from plaintiffs’ agent, made according to the custom of brokers, purchases and sales for account of the plaintiff, which involved millions. In the case of the purchases they advanced the entire cost beyond the sixty thousand dollars on deposit with them, and retained the securities as margin. This a broker, who is employed as such to purchase and carry stock or other securities, has a right to do (Horton v. Morgan, 19 N. Y. 170). The stocks and bonds for the conversion of which this action is brought, were purchased in precisely the same way, namely in defendant’s own name, and on their own-credit, and at the time of their alleged conversion the plaintiff was indebted to the defendants thereon in a sum exceeding two hundred and fifty thousand dollars, over and above the sum of sixty thousand dollars deposited. And as the plaintiff never had any personal dealings with the defendants before the alleged conversion, she can make title only through the acts of her husband, and to that end she must adopt all the instrumentalities by which the stocks and bonds were purchased, that is to say, the entire series *112 of speculative transactions of which they were a part. Accounts had been rendered covering the transactions during the months of June, July and August, and moneys had occasionally been paid to the plaintiff, by checks to her order, on account of profits made ; when the change in the market occurred. In September, the stock-market became excited, and the defendants being apprehensive of it.s course, and fearful of heavy and. sudden depreciations in the market value of stocks and bonds, and of the embarrassment which might ensue therefrom to themselves and their customers, and considering in reference to the plaintiff and her agent the said George A. Wicks, that they resided at Fort Washington, and had no place of business near that of defendants, and could not be easily communicated with, required of the said George A. Wicks, and, on September, 18, received from him as the agent of the plaintiff, authority in writing to sell in their discretion, at public or private sale, and without notice to the plaintiff or any notice whatever, the stocks, bonds, or gold, which they were or might be carrying for the plaintiff, whenever her margin shall fall below five per cent.
By this instrument George A. Wicks did not confer on the defendants all the powers possessed by him as the agent of the plaintiff,—the power to bay and sell generally at discretion,—but merely the power to sell such securities as by the exercise of his own discretion had come to their hands. And even this power was not conferred upon the defendants absolutely, but their right to exercise it was made to depend on a proper exercise of discretion and upon a fall of the margin below five per cent. As thus interpreted the delegation of authority that was made to the defendants, was, under the circumstances, clearly within the scope of the general powers of George A. Wicks, and the plaintiff is bound by it, for, as already stated, the powers con *113 ferrecL by her upon her husband must be construed with reference to the usages of the speculative business to which they related. When they are thus construed it is, in view of all the circumstances, and especially in view of the magnitude of the risks involved and the amount of watching required in consequence thereof, not at all astonishing that the defendants were intrusted with a limited discretion to sell. The instrument was, therefore, not objectionable on this ground. Mor could it be rejected on the ground that thereby George A. Wicks waived plaintiff’s right to a demand, and to notice of the time and place of sale. As it would have been entirely sufficient to have made such demand of George A. Wicks, and to have given the notice to him, as the agent charged with the management of the entire transaction (Millikin v. Dehon, 27 N. Y. 364), he had a right to waive them. The paper of September 18 was therefore properly received in evidence, and none of the exceptions based upon the effect given to it are well taken.
The question therefore remains: Did the defendants make a proper exercise of the authority delegated ? There is no dispute in regard to the statement of the accounts between the parties. The action is not predicated upon any balance claimed to be due from the defendants to the plaintiff, but it is for the conversion of a specific lot of stocks and bonds which had been carried for the plaintiff on the faith of the authority to sell delegated by the paper of September 18, on which the plaintiff was indebted to the defendants in a sura exceeding two hundred and fifty thousand dollars, over and above the amount of her deposit, and which, with the exception of three hundred shares of Wabash, for which no bids could be obtained and which were subsequently sold, but as to which sale no question arises, in consequence of the entire exhausion of the margin by a panic, the defendants on *114 September 28, 1869, sold for account of the plaintiff. They possessed no arbitrary discretion to sell, but a discretion to be exercised upon sufficient cause. Upon this point there was abundant evidence to the effect, that the defendants acted not only within the scope of their authority", but honestly and in good faith, and in the exercise of their best judgment and discretion. They are not guarantors of their infallibility, nor of the soundness of their judgment, and all that could be expected of them was that upon the occurrence of the event contemplated in the paper of September 18, they should do what from their experience they deemed best under the circumstances. And that their judgment on September 28 was sound, has been attested by the fact that on the following day the market went still lower, and that the stocks and bonds in question could have been repurchased at a profit of fifteen thousand dollars, provided the plaintiff had, as she was requested to do, provided the necessary funds or put up a sufficient margin. If, therefore, the question was fairly submitted to the jury, their finding upon this point should not be disturbed. The difficulty which here presents itself, arises upon the language used by the learned judge below in his charge to the jury. After telling them that the discretion conferred upon the defendants by the instrument of September 18, was not an arbitrary one, but a discretion to be exercised upon sufficient cause, and that without the existence of sufficient cause on September 28, the sales made on that day could not be justified under it, he continued to charge as follows :
"It has also been determined by the court, as matter of law, that the discretionary power which was thus vested in the defendants was as well for their own protection as for the benefit and interest of their principal; and the proposition, therefore, may be stated thus: *115 That-, whenever the state of the stocks and money market rendered it prudent, either for the benefit or protection of their principal (the plaintiff) or for their own protection, to sell the stocks and bonds which the defendants were carrying for the plaintiff, they had a right to do so under the power which had been conferred upon them.
If, therefore, you believe that on September 28, the state of the market was such that a prudent and careful man would have deemed it expedient to sell, either for the benefit and protection of his principal or for the protection of himself, then the sale was justifiable.
But if you believe that there was no sufficient reason existing at the time, to make it expedient to sell, either for the benefit of the plaintiff or for the protection of themselves, then the sale was not justifiable, and the defendants are liable to the plaintiff for her damages.’*
Plaintiff’s counsel duly excepted to this portion of the charge, and requested the court to charge:
“ 5. The defendants were bound, under the authority which they held, to exercise that authority in the interest of the plaintiff, and not in their own interest.
6. If the jury find that the defendants sold the stocks in question in their own interest, and to save themselves, the plaintiff is entitled to a verdict.”
The request was denied, and plaintiff excepted. At first blush these rulings may seem indefensible, but reflection has convinced me that under the peculiar circumstances of this case they were not erroneous. The fair import of the language used, when considered with the other facts In the case, was that the def mdants, in the exercise of a proper discretion, had the right to sell to protect themselves against a loss that might possibly ensue if they carried the stocks and bonds in question too long. These were not deposited with them for purposes of permanent investment, but had been purchased on their own credit for the account of the plaintiff, on a *116 margin, and the plaintiff was largely indebted to the defendants for advances thereon. Upon a fall of the margin below five per cent, the interests of the plaintiff and of the defendants became in fact identical with regard to such stocks and bonds. So, independently of the instrument of September 18, the defendants possessed the right of a pledgee to sell on demand and reasonable notice, for the purpose of reimbursing themselves for their advances, and if such demand had been made, and the notice given, the defendants would have had an absolute right to sell. By that instrument the plaintiff waived her right to such demand or notice. Having acquired by such waiver, the right to sell for their own protection, all the defendants were bound to do, was to act in good faith.
The question whether or not the defendants, on September 28, waived their discretionary .right to sell for the period of twenty-four hours, was also submitted to the jury under instructions quite favorable to the plaintiff', and under such instructions and the evidence in the case, the jury must be presumed to have found either that no such waiver took place, or, if it did, that the plaintiff subsequently ratified the sale.
As the authority given to the defendants enabled them to sell without notice at public or private sale, a sale at the board of brokers was valid (Milliken v. Dehon, 27 N. Y. 364).
The exception taken at folio 351 relates merely to the form of the question, and is quite unimportant when considered either in connection with the other evidence upon the same point, or the merits of the case.
Plaintiff's exceptions should be overruled, and the defendants should have judgment on the verdict, with costs.
Vah Yokst and Speik, JJ., concurred.