(Decided 24th June, 1885.)

---

THOMAS O'CONNELL *vs.* JAMES T. KILPATRICK, and FRANK E. KILPATRICK, trading as F. E. KILPATRICK & Co.

### Admissibility of Evidence.

In an action to recover damages for the alleged unlawful taking of the plaintiffs' goods, evidence offered on the part of the defendant, tending to show that the party from whom the plaintiff claimed

title had disposed of the goods for the purpose of defrauding his creditors, and that the plaintiffs' agent had participated in the fraud, is admissible.

APPEAL from the Court of Common Pleas.

This suit was brought by the appellees to recover damages of the appellant for the alleged illegal seizure of the plaintiffs' goods. (*Vide* the case of *O'Connell vs. Ackerman*, 62 *Md.*, 337.)

*First Exception.*—At the trial of this cause the plaintiffs, to maintain the issues on their part joined, proved by John H. V. Ackerman, that his firm, Ackerman & Bennett, were the agents of the plaintiffs, and sold to George H. H. Condon, in March, 1882, a bill of goods amounting to $230, for which a four months note was given, falling due July 17th; that in June another bill was sold by them to Condon for $280, for which a three months note was given; a third bill was sold to Condon, delivered 14th July, amounting to $800. These last goods were supplied from goods in the store of Ackerman & Bennett, they selling by sample generally, but these goods were a lot left there for sale out of the usual course of their business as agents; Ackerman & Bennett communicated to the plaintiffs Condon's offer to purchase these goods, Condon having made an offer less than the usual price, the goods not being seasonable, saying if they received no instructions to the contrary, they would sell them to him. Hearing nothing from the plaintiffs the sale was consummated and the goods delivered on the 14th of July, 1882. On the 17th of July, the note first above mentioned was protested. Witness heard of this on the 20th or 21st of July, Condon told witness he had not quite enough money to meet the note, but would pay it in a few days; witness again visited Condon in a few days, but was put off with promises. In August witness was instructed by plaintiffs to take payment as he could, in instalments, but nothing

was paid up to the early part of September. Mr. Kilpatrick then went with witness to Condon's store; he talked plausibly and promised to pay; witness called every day, having been told to call by plaintiffs and by Condon. The day before O'Connell's attachment, witness by instructions of his principals, went to Mr. Nelson's office to take advice of counsel, and then went to Condon's store and offered to take back one-half the last bill; Condon did not object, but asked time; witness insisted on it; he then promised to give half of the last bill in goods purchased of Kilpatrick; next day Bennett and witness went to Condon's store and selected four hundred and forty dollars in goods, at the prices billed to Condon, we took them away; while packing these goods, in common with others, the plaintiffs having ordered all their goods to be returned to them, O'Connell came in and said: "where are the goods you took from Condon's?" witness pointed them out, at the same time telling him they were Kilpatrick's goods. O'Connell and the sheriff came in and they took them away, O'Connell entering the store first; witness immediately went to Mr. Nelson's office, and thence to Condon's store, which was still open, and which was apparently well stocked; the goods taken from Condon's store by witness and Bennett were worth $500, he having been asked to state the value of the goods seized. Ackerman further testified that Ackerman & Bennett were agents of the plaintiffs, to sell by sample goods manufactured in New Jersey, and which were shipped from the factory to purchasers; they kept samples at their store-room on Sharp street; they sometimes took notes from purchasers and forwarded, and occasionally collected bills when directed to do so by their principals.

The defendant's attorney on cross-examining the witness, asked him did you go to John C. Stalfort, a couple of days before Condon's note to Stalfort was due, and tell him Condon was not going to pay it, and it was no use

suing, as by suing he would never get a cent, or words to that effect? To this interrogatory, the plaintiffs, by their attorney, objected, and the Court sustained the objection, and ruled the question out as inadmissible at this stage of the case; to this ruling of the Court the defendant excepted.

*Second Exception.*—After the plaintiffs had offered the evidence set forth in the first bill of exception, all of which is made part hereof, the plaintiffs' witness Ackerman, on further cross-examination, testified, that he did not know, during the time from the 17th of July, to O'Connell's attachment, by Condon's statements or otherwise, that Condon had removed goods from his store not in the ordinary course of business. That afterwards there was a shoe store opened on Baltimore street, and Condon was tending it; witness asked him if it was his business, and he said no, it was M. Regan's business; witness saw Condon and his son attending to the business, saw no one else there except once when he saw two strangers sitting back; witness got no satisfactory information; witness was there two or three times, thought he recognized some of Kilpatrick's made shoes; Condon laughed and said, "that's part of the stock taken by the sheriff from your store;" witness showed him samples, but as he said he was not able to buy for cash, witness did not sell to him.

On re-examination the witness said that the goods taken by the sheriff were sold by the sheriff before the trial of the attachment suit. The plaintiffs then offered evidence by George W. Roseman, tending to prove that the witness is a deputy sheriff, and went to Ackerman & Bennett's at direction of Mr. O'Connell and Mr. Mullin, to serve an attachment issued at the suit of *O'Connell vs. Condon;* Mr. O'Connell told me to take such goods as came from Mr. Condon's store on Fayette street; witness made inquiry of Ackerman & Bennett for the goods which came from Condon's store; O'Connell was with witness; witness

asked Ackerman to point out the goods; Ackerman did so; witness made a schedule and appraisement. The goods were after that held under the attachment; witness does not think he asked any question about Kilpatrick, and don't remember Ackerman's saying they were Kilpatrick's goods; took no goods except such as Ackerman pointed out, as having come from Condon's store; Bennett was one of the appraisers, but witness thinks he excused Ackerman from acting as an appraiser.

The plaintiffs then offered evidence by V. B. Bennett, tending to prove that he was of the firm of Ackerman & Bennett, who were agents of the plaintiffs at the time of the service of the attachment in the store of Ackerman & Bennett; witness was talking with O'Connell, and Ackerman was talking with the deputy sheriff; O'Connell asked "where are the goods you got from Condon's?" or "where are Condon's goods?" Witness remarked, "we have no goods of Condon's, but have some goods returned by Condon to F. E. Kilpatrick & Co., in payment of a bill;" to which O'Connell replied, "I'll show you about that," or "we will see about that," or something to that effect; the goods were in boxes and cartoons; they were taken away; there were shoes, and witness thinks boots; witness could not say the number of boxes, cases, or dozens; several dozen pairs of shoes were taken; witness was one of the appraisers; it was agreed between O'Connell and ourselves that the goods should be valued on the basis on which they had been taken from Condon.

The plaintiffs having closed their direct evidence, the defendant produced as a witness on his behalf John C. Stalfort, who being duly sworn, was asked by the defendant's attorney "whether in the summer of 1882, the witness was a creditor of George H. H. Condon," and on the question being objected to by the plaintiffs' attorney, and the Court calling for the object of the defendant's attorney in asking the question, he stated that he intended to follow

up the question by the offer of evidence by the witness and others, tending to show that Condon was then engaged in an attempt to defraud his creditors, and that Ackerman, the agent of the plaintiffs, aided and abetted Condon in this attempt, and that the delivery of the goods, for the taking of which the plaintiffs sue in this case, was part of the consideration given by Condon to Ackerman for his aid and co-operation. But the plaintiffs objected first to the question, and then to the question after the defendant's counsel had stated his proffer of further proof; and the Court sustained the objection, and directed the witness not to answer the question; to this ruling of the Court the defendant excepted.

*Third Exception.*—The defendant, offered by Thomas O'Connell, evidence tending to prove that the witness is the defendant; that in May, 1882, Condon renewed his promissory note to witness, payable in July, but it was not paid. The defendant's attorney then asked the witness, "please state whether Condon made a proposition to you in 1882?" The plaintiffs' attorney objected to this question, and the Court asked defendant's attorney what he intended to prove by it, and he said that he expected to prove by the witness in answer to the said question, that Condon came to witness and offered to give him goods of the value of four or five times his debt, if he would keep them safe from his (Condon's) creditors, till he (Condon) was able to effect a settlement with his creditors at less than the amount due them. That witness refused said offer, and declined to have anything to do with it. The attorney for the defendant further proffered to follow up said testimony by other evidence, showing the intent of said Condon to defraud his creditors, and that Ackerman, the plaintiffs' agent, knew such fraudulent intention of Condon, and aided and participated in it, particularly by agreeing to act as trustee under a deed of trust from Condon, which was professedly to be a deed of trust for the bene-

fit of Condon's creditors, but which was really to be a fraud upon them, the said Ackerman consenting to use his position as trustee the better to enable Condon to conceal part of his property from his creditors; and that Condon, on the day he gave the goods to Ackerman for the Kilpatricks, as testified by Ackerman, made to him and George E. Nelson, a deed for the benefit of his creditors, which required that after payment of the costs and expenses of the trust, with reasonable commissions to the trustees, and payment of the debts of releasing creditors, the surplus, if any, should be paid to the grantor; and that the delivery of said goods to Ackerman, and the making of said deed, were parts of the means devised by Condon and Ackerman, to accomplish Condon's fraudulent intent. But the attorney for the plaintiffs objected first to the question, and then to the proffer of further proof, and the Court sustained the objections and ruled the question out of the case, and also ruled out the further evidence so proffered, the defendant's counsel having declined to say, though interrogated, that the plaintiffs had knowledge of, or participated in, said alleged fraudulent transaction; to which rulings of the Court the defendant excepted.

*Fourth Exception.*—The plaintiffs offered the two following prayers:

1. If the jury believe from the evidence, that the goods mentioned in the declaration belonged to the plaintiffs in this case, and were in the possession of their agents, Ackerman & Bennett, as testified to in the evidence, and that said goods were taken from the possession of Ackerman & Bennett by the sheriff of Baltimore City, or his deputies, at the instance and by the direction of the defendant, and carried away, then the plaintiffs are entitled to recover; and if they further find that the defendant has never returned them to the plaintiffs, nor replaced said goods, then the legal and proper measure of damages

O'Connell *vs.* Kilpatrick & Co.

therefor is their true value as shown by the evidence at the time they were taken and carried away.

2. If the jury find the facts as stated in the preceding prayer, then for the purpose of increasing the damages, they can consider any facts and circumstances that may be in proof before them, if any, that accompanied and gave character to the trespass, and which showed aggravation in the commission of the same.

The defendant offered the following prayers:

1. There is no legally sufficient evidence in this cause from which the jury can find the actual value of the property alleged to be taken and for which suit is brought.

2. The plaintiffs are not entitled to exemplary or punitive damages, if the jury should find that the defendant caused the sheriff to take said goods, under a *bona fide* claim of right under the law, and without any malicious motive, or purpose to harass or injure the plaintiffs.

The Court (STEWART, J.,) granted the plaintiffs' prayers, and the defendant's second prayer, which was conceded by the plaintiffs, but rejected his first prayer; to which ruling of the Court in rejecting the defendant's first prayer, and granting the plaintiffs' prayers, the defendant excepted.

The verdict and judgment being for the plaintiffs, the defendant appealed.

The cause was argued before ALVEY, C. J., STONE, MILLER, ROBINSON, RITCHIE, and BRYAN, J.

*Michael A. Mullin,* for the appellant.

*Geo. E. Nelson,* for the appellees.

BRYAN, J., delivered the opinion of the Court.

In the third bill of exception it is stated that the defendant (now appellant) offered to prove that Condon was

engaged in an effort to defraud his creditors; and that Ackerman (the plaintiffs' agent) aided and participated in his scheme; and that the goods in question were delivered to Ackerman by Condon in furtherance of this purpose. If these facts were established by evidence, undoubtedly no title would be acquired to the goods as against the creditors of Condon. The transaction would be void, and the goods would be liable to their claims as fully as if the delivery had not taken place. This result is not changed by the fact that Ackerman was acting as the agent of the plaintiffs. The plaintiffs' title is derived from, and depends upon, the dealings between Ackerman and Condon. Ackerman could not acquire a good title for them by unlawful means. It is not alleged that the plaintiffs knew of any fraudulent dealing by which the possession of the goods was obtained. Nevertheless as their title arose from the contract between Condon and Ackerman, if that contract was void, and incapable of conveying a good title, it is manifest that they have none. Suppose that Ackerman had taken the goods by force, no one would contend that his principals could maintain a title founded on such a seizure. Fraud is more odious to the law than force, and will vitiate every proceeding by which it is affected. If the plaintiffs had a title to these goods otherwise valid, it would not be defeated by the misconduct of their agent. But the allegation made here is that the very origin of their title is defective. Of course we have no means of knowing whether the defendant could have established the facts which he offered to prove; but it was his right to submit the proffered evidence to the jury for their decision. The questions overruled in the first and second bills of exception were not relevant standing alone. The evidence by which the defendant proposed to follow up the question stated in the second bill of exception was afterwards more fully stated in the third. As we have decided that this final offer was im-

properly rejected, it seems unnecessary to say anything more on this subject. The prayers were necessarily based upon the testimony which was permitted to go to the jury, and on this basis the rulings of the Court were correct. But on account of the error in the third exception the judgment must be reversed.

*Judgment reversed, and*
*new trial awarded.*

(Decided 24th June, 1885.)