JONATHAN TRUMBULL, TRUSTEE, *vs.* GILBERT L. HEWITT AND WIFE.

Second Judicial District, Norwich, May Term, 1894.* ANDREWS, C. J., TORRANCE, FENN, BALDWIN and GEORGE W. WHEELER, Js.

In a suit to set aside certain conveyances of real estate made by a husband to his wife, as being fraudulent and void against his creditors, the wife testified in her own behalf that at the time of such transfer she had no knowledge that her husband was in embarrassed circumstances, and knew nothing about his business or of any intent to defraud creditors. *Held* that, as bearing on this question of knowledge, she might properly be inquired of on cross-examination respecting transfers of other real estate made to her by her husband about a year previous.

The grantee of property conveyed by an insolvent debtor in order to cheat and defraud his creditors, does not acquire a valid title thereto, unless he is an innocent purchaser as well as a purchaser for value. As a general rule the purchaser for value cannot be affected by the debtor's fraud unless he knowingly participates and assists in the fraud. The debtor may, however, in such a transaction, act not only for himself but also (and especially in case of a transfer to his wife) as the agent for the vendee or grantee; in which case his object, purpose, knowledge, and to a limited extent also his frauds, become those of such vendee or grantee.

Certain evidence offered by the plaintiff was objected to by the defendants

*Transferred from the first judicial district by agreement of parties with the consent of the court.

and ruled out, the court remarking that it might however be relevant to an accounting if that should thereafter become essential. Thereupon counsel agreed, for the convenience of the witnesses, that the testimony might then come in subject to defendants' objection; and thereafter the defendants offered evidence upon the same subject and were fully heard thereon. *Held* that error could not properly be predicated of the action of the court, under the circumstances, in receiving the testimony contingently; and that even if improperly received its admission could have done the defendants no harm, as it did not appear that the court ever reached the matter of an accounting, or considered the evidence for such purpose.

A finding by the trial court that certain depositions, objected to as not being the depositions of the alleged deponents but mere copies of former depositions given by such deponents on another trial, were the depositions of the witnesses, duly given at the time and place certified by the magistrate, is conclusive upon this court upon appeal.

The appellants gave due notice of an appeal and at the same time asked in writing that the time for filing the request for a finding, under § 1132 of the General Statutes, might be extended ten days, which the court granted. Before the time as extended had expired the defendants filed a written request for a finding which contained a draft of a proposed finding. Subsequently the appellants claimed that the request and draft constituted a request to the judge to incorporate in the finding such facts as they claimed to be proven by the evidence, pursuant to chapter 174 of the Public Acts of 1893. The trial court did not adopt that view of the law, but made the finding under the provisions of § 1132 of the General Statutes and the rules of court. *Held* that the action of the trial court was correct.

[Argued May 31st—decided September 1st, 1894.]

ACTION to set aside certain deeds of real estate alleged to have been made in fraud of creditors, and for possession of the land so conveyed, brought to the Superior Court in Windham County and tried to the court, *Hamersley, J.;* facts found and judgment rendered for the plaintiff, and appeal by the defendants for alleged errors in the rulings of the court. *No error.*

The case is sufficiently stated in the opinion.

*Charles E. Perkins* and *Solomon Lucas,* for the appellants (defendants).

I. The whole finding should stand as a part of the record of the case. The application, under the General Statutes of 1888 and the rules of court, was properly made. But

regardless of whether the request for a finding was made under the General Statutes of 1888 and the rules of court, or the Act of 1893, or both, the whole should be treated as a part of the record; for, if under the law of 1888, after a finding had been filed by the court, a request had been made for an amendment to such finding, it is to be presumed the court would have amended it so as to have included the whole finding as it is now printed, and not have refused to have amended it according to the fact, and so that the questions raised upon the trial would appear of record.

II. The depositions of Charles F. Setchel and Charles J. Setchel should have been excluded. In fact it was practically admitting depositions used in one suit, to be used in another suit.

The statutes relative to taking depositions were intended to guard against any such abuse and this court has construed them liberally so as to prevent the mischief intended to be remedied by it. *Dodd* v. *Northrop*, 37 Conn., 217 ; *Allen* v. *Rand*, 5 id., 322 ; *Bunnell* v. *Taintor*, 4 id., 572.

III. The evidence objected to by the defendant relative to the Advertiser building and the Warren street property should have been excluded by the court.

The real purpose of the testimony was to prove fraud on the part of Mrs. Hewitt in the transaction involved in this suit, by going into other transactions made at other times in no way connected with these, which were then and on a former trial claimed to have been fraudulent and without consideration.

The question, what she paid for other property, not a part of this transaction, was clearly inadmissible. The fact that subsequently the defendants offered testimony relative to the same subject-matter was no waiver on their part of the objection. They were practically compelled to do that by the action of the court in wrongfully admitting testimony. *Thomas* v. *Beck*, 39 Conn., 243 ; *Partelo* v. *Harris*, 26 id., 480 ; *Preston* v. *Griffin*, 1 id., 395 ; *Clark* v. *Johnson*, 5 Day, 379 ; *Sisson* v. *Roath*, 30 Conn., 17 ; *Pomeroy* v. *Mainn*, 2 Paine, 490 ; Kerr on Fraud and Mistake, p. 212.

The purpose of Mr. Hewitt cannot affect the title of Mrs. Hewitt. A conveyance for a valuable consideration is not void if made to defraud creditors unless the fraud is participated in by the grantee which is expressly found not to be the fact in this case. *Hamilton* v. *Staples*, 34 Conn., 324; *Maniac* v. *Thompson*, 7 Peters, 348; *Johnson* v. *Johnson*, 3 Met., 65; *Bridge* v. *Eggleston*, 4 Cush., 65; *Merrill* v. *Meacham*, 5 Day, 346. No fraud being found on her part none will be presumed. *Werden* v. *Howe*, 10 Conn., 54; *Dwight* v. *Brown*, 9 id., 91.

That there was a consideration for these conveyances is found. Courts have repeatedly held that inadequacy of consideration without fraud is not sufficient cause to set aside a conveyance. *Clark's Appeal*, 57 Conn., 571, and authorities cited by the court; *Hemingway* v. *Coleman*, 49 Conn., 390; *Dean* v. *Caruth*, 108 Mass., 245; *Sainborn* v. *Meech*, 22 N. H., 246–8; *Whittle* v. *Skinner*, 23 Vt., 532; *Oakley* v. *Boardman*, 21 Wend., 588–9. The fact that the husband drew the money from the bank on his wife's order with an agreement to pay to her the principal and the same interest as the money would earn in the bank, and gave her his note for a part, not as trustee but personally, and the other facts detailed in the finding, show that he, within the decisions of this court, abandoned his right to said deposit. *State* v. *French*, 60 Conn., 478; *Comstock's Appeal*, 55 id., 215; *Mason* v. *Fuller*, 36 id., 161; *Williams* v. *King*, 43 id., 574; *Hayt* v. *Parks*, 39 id., 357; *Carr* v. *Briggs*, 156 Mass., 81.

There was not only a consideration for these conveyances but it was an adequate one. The note to Mrs. Hewitt was payable on demand. 1 Daniel on Negotiable Instruments, § 88, note 5; *Bacon* v. *Page*, 1 Conn., 404. The note being payable on demand bore interest from date. Such has always been deemed the law of this state. 1 Swift's Digest side page 715; *Parday* v. *Phillips*, 1 Kernan, 406.

*Jeremiah Halsey* and *Donald G. Perkins*, for the appellee (plaintiff).

I. The request for a finding was not filed by the defendants in time. Rules of Practice, XVII., § 3. The additional right of appeal given by the Act of 1893 does not authorize the court to extend the time within which the request for a finding must be filed.

The appeal, then, is under the old law, and paragraphs 14½, 15 and 17 are not properly a part of the finding on which the appeal is based.

II. The deeds in question were given without legal consideration. General Statutes, § 2792; *French* v. *Burns*, 35 Conn., 363. If the deeds, which were absolute in form, were in fact intended as security they are fraudulent and void as to creditors.

The court finds that the husband did not abandon his right as statutory trustee; it was not a case of his giving up the specific trust property, but was a transfer of his own property inherited and not accruing in any way from the trust property, to take the place of the property which he had used. The husband then still remained trustee entitled to a life use of the estate conveyed. *Plumb* v. *Ives*, 39 Conn., 120; *Hayt* v. *Parks*, id. 360.

If the transfers can stand at all in equity, it would be as security for the return at the termination of the trust of the $1,798.30. If the consideration was to pay a debt of $1,798.30 to be due at some uncertain time, and the property was worth $4,500, then the consideration was grossly inadequate, and the deeds should be void as to the excess at least. *Converse* v. *Hartley*, 31 Conn., 372; *Paulk* v. *Cooke*, 39 id., 572; *Strong* v. *Lawrence*, 58 Iowa, 55; *Lynn* v. *Haddock*, 59 id., 682; *Church* v. *Chapin*, 35 Vt., 223.

The question whether the husband had abandoned his rights in his wife's property is a question of intention, and that in turn is always a question of fact, and the conclusion of the trial court thereon is final. *Williams* v. *King*, 43 Conn., 574; *State* v. *French*, 60 id., 481.

The note was not intended as a binding obligation between them; it was merely a receipt or evidence that the husband had received her money. The court says: "Neither

party understood the giving and receiving the note as in any way altering or affecting the verbal understanding at the time the money was drawn." Such a note, where no time for payment is specified in it, is payable on demand. *Bacon* v. *Page*, 1 Conn., 404 ; *Paine* v. *Caswell*, 68 Me., 80.

Husband and wife married prior to 1877, could not contract together and be bound at law ; one could not sue the other on such a contract. Even a bond given by the husband to the wife, before marriage, was rendered void by the marriage. 1 Swift (s. p.), 29, 38 ; *Ecc. Society* v. *Mather*, 15 Conn., 599 ; *Winters* v. *Burnham*, 19 id., 176 ; *Jackson* v. *Parks, Ex.*, 10 Cush., 550 ; *Ingham* v. *White*, 4 Allen, 413 ; *Bassett* v. *Bassett*, 112 Mass., 99 ; *Turner* v. *Nye et al.*, 7 Allen, 176 ; *Phillips* v. *Frye*, 14 id., 36 ; *Clark* v. *Patterson*, 158 Mass., 391 ; *Darcy* v. *Ryan*, 44 Conn., 518 ; *Maraman's Admr.* v. *Maraman*, 4 Metc. (Ky.) 91.

The husband acted as the wife's agent in the transaction and she is bound by his knowledge of his own fraud. *Bank* v. *New Milford*, 36 Conn., 101 ; *Willard* v. *Buckingham*, id., 402 ; *Smith* v. *Water Commissioners*, 38 id., 218 ; *Clark* v. *Fuller*, 39 id., 240 ; *Reed* v. *Moody*, 60 Vt., 672 ; *Shelton* v. *Church*, 38 Conn., 412 ; *Smith* v. *Vreeland*, 16 N. J. Eq., 202, 265 ; *Harris* v. *Sumner*, 2 Pick., 136.

III. The finding of the trial court in regard to the Setchel depositions is conclusive and precludes the defendants from raising any legal question upon this branch of the case.

The fact that the deposition admitted in evidence is word for word like a former one, is not conclusive evidence that it is a mere copy of the former, and not the actual deposition of the party ; it is at best but a circumstance tending to prove by inference the fact claimed. The inference was insufficient in this case and the court found the fact otherwise.

IV. The evidence relative to the Advertiser building and the Warren street property was properly received. *Hoxie* v. *Home Ins. Co.*, 32 Conn., 37.

TORRANCE, J. This is a complaint by a trustee in insolvency alleging, in substance, that the three conveyances of

real estate described therein, made by the defendant Gilbert L. Hewitt to the other defendant his wife, are fraudulent and void as against the creditors whom the plaintiff represents, and praying that the same may, for that reason, be set aside. In the court below judgment was rendered in favor of the plaintiff, and from that judgment the defendants take this appeal.

The principal question presented by the appeal is in effect whether or not Mrs. Hewitt can hold the lands so conveyed to her, as a purchaser in good faith and for a valuable consideration.

Before discussing that question however, it may be well to dispose of certain matters of minor importance assigned for error in the reasons of appeal. One of these is whether paragraphs 14½, 15 and 17 of the finding ought to be treated as a part of the record. The court below rendered judgment in this case on the 5th of August, 1893, and the notice of appeal was filed August 9th. On this last named day the defendants filed the following request : " Request is hereby made that the time for filing the request for a finding under the provisions of General Statutes, § 1132, be extended ten days—that is, until the 29th day of August, 1893." In pursuance of the rule of court regulating the proceedings under § 1132 the request was granted. On the 28th of August the defendants filed a written request for a finding, containing a draft of a proposed finding. Subsequently counsel for the defendants claimed that said request and draft of proposed finding were also intended as a request to the judge to incorporate in the finding such facts as they claimed to be proven by the evidence, under the provisions of chapter 174 of the Public Acts of 1893. The court below did not take this view of the matter, but made the finding under the provisions of § 1132 of the General Statutes and the rules of court regulating the same. The record then proceeds as follows :—

" But, in order that the finding may be complete, in case the Supreme Court of Errors shall be of the opinion that the defendants have legally filed a request for the incorporation of facts in the finding under the Act of 1893, I include in

paragraphs 14½, 15 and 17, all of the facts set out in the draft for finding filed by the defendants, which I find proven by the evidence and not included in other paragraphs, although these facts cannot properly and should not, be incorporated in the finding unless the defendants' draft for a proposed finding is held to be 'a legal request for their incorporation in the finding under the Act of 1893.'"

We think the court below, in holding that this appeal was not taken under the provisions of the Act of 1893, took the correct view of the matter; and consequently that the aforesaid paragraphs thus contingently made a part of the finding ought not to be regarded or treated as a part of it. We notice this point however only as touching a matter of practice, for in the view which we take of the principal question in the case the facts set forth in the paragraphs in question become of no importance.

Upon the trial of the case the plaintiff offered in evidence two depositions which had been duly taken at Denver, Colorado, upon lawful notice given to the defendants. To the admission of these depositions the defendants objected on the ground that they were not the depositions of the parties, but were merely copies of former depositions given by the deponents in another case. The court below, however, found the fact upon which this objection was based to be untrue, and that "the depositions in question were the depositions of the parties duly given at the time and place certified by the magistrate." That finding is conclusive upon this appeal.

Upon the trial below "Mrs. Hewitt testified in her own behalf that at the time of the conveyances to her she had no knowledge that her husband was in embarrassed circumstances, and knew nothing about his business or any intention to defraud creditors. She was cross-examined as to her knowledge of the transfer to her of the Advertiser building in Norwich, which had been placed in her name in 1888 by her husband, and which she claimed she had bought. Having said she did not negotiate for the purchase, she was asked if she received the deeds from the par-

ties.  This question was objected to as irrelevant, and was admitted by the court.  The defendant also asked to have all cross-examination as to the Advertiser building stricken out.  It was claimed by the plaintiff as showing knowledge of facts tending to show the condition of Hewitt.  The court refused to strike out the testimony.  Mrs. Hewitt was also cross-examined as to the transfer to her by her husband of some land in Norwich, on Warren street, in 1888, which transfer had also been the subject of a suit, for the purpose of showing her knowledge of her husband's condition and for the further purpose of showing that at the time she did not consider her husband indebted to her.  The question, 'Did you pay anything for the transfer of that lot?' was objected to by the defendants as *res adjudicata* and was admitted by the court."

We cannot see that the court below erred in any of these rulings.  One of the questions in issue was whether Mrs. Hewitt in 1889 had any knowledge of her husband's business and of his then embarassed financial condition and of his intention to defraud his creditors.  She testified that she had no such knowledge.  Upon this issue her knowledge of his business and of his financial condition in 1888, was a relevant fact; and it was for the sole purpose of showing her knowledge of his business and financial condition in 1888, that she was cross-examined concerning the transfer to her of the Advertiser building.  Upon this question of her knowledge of her husband's affairs in 1888, we think the cross-examination objected to was permissible.  *Hoxie* v. *Home Ins. Co.*, 32 Conn., 37.  The evidence as to whether or not she paid anything for the transfer to her of the Warren street property was also admissible for the purpose for which it was offered.  Mrs. Hewitt claimed that from about the year 1876 down to 1889 her husband had been continuously indebted to her in a large amount.  If she had paid him in 1888 for the Warren street property and while he was still largely indebted to her, this would tend to discredit her claim.  The question objected to was clearly proper upon cross-examination.  Moreover, even if the court below had

erred in all of the rulings now in question, we cannot see how this harmed the defendants or either of them; for the evidence objected to was offered for the ultimate purpose of showing actual knowledge on the part of Mrs. Hewitt of her husband's insolvency and of his intent to defraud his creditors; but the court has found that "she had no actual knowledge of the insolvency, no conscious intent to perpetrate a fraud, and no actual knowledge of the intended fraud" of her husband.

Upon the trial below the plaintiff offered evidence of the sale of building lots from the lands described in the complaint, after the conveyance of said land to Mrs. Hewitt in 1889, and of the prices obtained for said lots, for the purpose of showing that she had in fact received from such sales more than the amount she might have given for the land. The plaintiff claimed this evidence contingently, in case "it might appear as a part of the defense that Mrs. Hewitt acted in good faith, and that there was some, although a greatly inadequate, consideration"; and claimed that in that event he would be entitled to relief in this proceeding in respect to the excess of the value of the land over the consideration paid, and that the evidence in question would be admissible. To the admission of the testimony for this purpose the defendants objected. The court said that "the evidence might be admissible if a condition arises which the · plaintiff says may arise in the case and we have got to come to a matter of accounting, but excluded the evidence for the present." Counsel thereupon agreed, in order to avoid detaining the witnesses, that their testimony might be taken out of order, subject to the defendants' objection, and this was done. Subsequently the defendants offered evidence tending to show consideration for the conveyances to Mrs. Hewitt, and were at issue with the plaintiff as to the adequacy of that consideration, and Mr. Hewitt testified to the same sales of lots in full, and to his expenses incurred in so doing, and to the disposition which was made of the money received for such lots. In the 12th reason of appeal the

action of the court in thus admitting the aforesaid testimony contingently is assigned for error.

There are two good and sufficient answers to this claim. In the first place error cannot properly be predicated of the action of the court in receiving the testimony contingently, under the circumstances disclosed by the record.   The court had already ruled that the testimony was, when offered, inadmissible ; it intimated, however, that in a certain contingency it might be admissible ; thereupon the parties, to accommodate the witnesses, agree that it may come in subject to the defendants' objection, to be used if the contingency should arise.   Clearly under these circumstances it was not improperly received, and it is of this alone that the defendants complain.   In the second place, if the evidence in question had been improperly received it nowhere appears that the court ever came " to a matter of accounting," or considered this evidence for such purpose; and it does appear that Mr. Hewitt testified fully as to these same sales of lots, and the prices obtained therefor, his expenses in making the sales, and the disposition of the proceeds.   Under these circumstances it is clear that the admission of the testimony objected to did the defendants no harm.

We have thus disposed of all the matters of minor importance assigned for error in the reasons of appeal, concerning which any question was made and decided adversely to the defendants in the court below, and we come now to the main question in the case which is, as before stated, whether or not Mrs. Hewitt can hold these lands conveyed to her by her husband, as a purchaser in good faith and for a valuable consideration.   The substance of the facts found upon this point may be stated as follows :—

The defendant, Gilbert L. Hewitt, and one Charles J. Setchel, were partners in business under the name of Hewitt and Setchel, from February, 1883, to August 29th, 1890 ; on said day they, as co-partners and as individuals, made an assignment in insolvency of all their property to the plaintiff as trustee, and on September 2d, 1890, he was duly appointed and qualified as such trustee.   Prior to September 9th, 1889,

Gilbert L. Hewitt owned the undivided half of the three pieces of land described in the complaint, his sister being the owner of the other, subject to the unassigned dower interest of their mother, who was nearly eighty years old. On the 9th of September, 1889, Hewitt conveyed his interest in one of said three pieces to one Ford, and on the same day Ford delivered to Hewitt a quitclaim deed of the same interest made to Mrs. Hewitt, the wife of Gilbert L. Hewitt. Both deeds were left for record by Hewitt at the same time on September 10th, 1889. On November 4th, 1889, Hewitt conveyed his interest in another of said pieces of land to one Hooper, who on the same day executed and delivered to Hewitt a quitclaim deed of the same interest made to Mrs. Hewitt, and both of said deeds were left for record by Hewitt at the same time on November 6th, 1889. On the 11th of November, 1889, Hewitt conveyed his interest in the third of said pieces of land to Ford, who on the same day executed and delivered to Hewitt a quitclaim deed of the same interest made to Mrs. Hewitt, and both of said deeds were left for record by Hewitt at the same time on November 13th, 1889. In these transfers no consideration passed to or from either of the parties, and Mrs. Hewitt had no knowledge of them until after all the deeds had been left for record. Subsequent to November 13th, 1889, Mr. Hewitt handed all the deeds to his wife, telling her they were in satisfaction of his indebtedness to her, and she received them in satisfaction of such indebtedness. She then believed her husband was indebted to her in the sum of about two thousand dollars, with interest since 1876. She at this time, at her husband's request, gave up to him the note which he had given to her in 1876, which read as follows: " Norwich, Conn., Aug. 14th, 1876. For value received I promise to pay Emma L. Hewitt One Thousand Five Hundred and Twenty-Six and $\frac{49}{100}$ dollars, $1,526.49. Gilbert L. Hewitt."

She " had made no demand for payment, and had no knowledge of her husband's intention to pay the same by conveying the land, and had no knowledge of the amount of interest due since 1876, and had no knowledge of the present amount

of the indebtedness, and no knowledge of the amount or nature of the land mentioned in the deeds. She made no inquiry whatever as to the amount due her, the situation or value of the land, the reason for the payment in land, or as to any matter connected with the transaction. Her whole knowledge and active participation in the transaction consisted in accepting the deeds in satisfaction of whatever indebtedness there might be." At the time of these conveyances to his wife, the fair market value of Hewitt's interest in the land so conveyed was $4,500. Hewitt was then insolvent and so continued till the assignment in 1890, and knew that said land was needed to pay his creditors. The debts allowed against the estate of Hewitt and Setchel amounted to more than $16,000, and the assets of said estate, including all the property of Hewitt and Setchel, and the three pieces of land conveyed to Mrs. Hewitt, are insufficient to pay said debts. These debts existed at the time of the conveyances to Mrs. Hewitt. "He made the conveyances to his wife for the purpose of placing this land, which was substantially all the property he then owned, beyond the reach of his creditors, and especially of the First National Bank, and with actual intent to defraud his creditors, and to secure for himself the beneficial interest in the property. In the execution of this fraud Mrs. Hewitt was his ignorant and passive instrument. She had no actual knowledge of the insolvency, no conscious intent to perpetrate a fraud, and no actual knowledge of the intended fraud."

It thus appears, to state the matter in brief, that Hewitt, at a time when he was knowingly a hopeless insolvent, conveyed to his wife substantially all the property he then had, worth $4,500, for the express purpose of placing it beyond the reach of his then creditors for his own benefit, and with actual intent to defraud those creditors. It is further found that the wife had no actual knowledge of the insolvency, none of the intended fraud, and that she received the conveyances in satisfaction of what she believed to be a debt due to her from her husband.

The defendants claim that Mrs. Hewitt in this matter,

upon the facts found, must be regarded as a purchaser in good faith and for valuable consideration, because she had no actual knowledge of the insolvency or fraud of her husband, and because, as they claim, she gave up a valid indebtedness against him as the consideration for the conveyances. This claim impliedly concedes that unless Mrs. Hewitt is both an innocent purchaser and also a purchaser for value, she cannot prevail in this suit; and the law is clearly so. It is not enough that she purchased the land innocently, unless she also gave a valuable consideration for it; and it is not enough that she gave such consideration for it, unless she also purchased innocently. Where in cases like this the conveyance is a voluntary one, it will be set aside even if the grantee be innocent of the fraud. *Hitchcock* v. *Kiely*, 41 Conn., 611; *McKenna* v. *Crowley*, 16 R. I., 364; and where the grantee participates in the fraud of the grantor the conveyance will be void as against creditors, even though the grantee paid full value. *Wadsworth* v. *Marsh*, 9 Conn., 485; *Hawes* v. *Mooney*, 39 Conn., 37; *Christian* v. *Greenwood*, 23 Ark., 258; *Renninger* v. *Spatz*, 128 Pa. St., 524.

The defendants strenuously insist that upon the facts with reference to the consideration which passed between Mrs. Hewitt and her husband for this land, as found upon the entire record as it stands, she must be regarded as having given a valuable and nearly adequate consideration for the conveyances. In the view we take of the case, it is unnecessary to pass on the validity of this claim and we purposely refrain from doing so. For the purpose of the argument however, and for that purpose only, we concede it to be true. We further concede that, as a general rule, where a debtor's sale or transfer of property is fraudulent as to creditors, the purchaser for value cannot be affected by the debtor's fraud unless he knowingly participates and assists in the fraud. *Partelo* v. *Harris*, 26 Conn., 483; *Christian* v. *Greenwood*, 23 Ark., 258; *Hamilton* v. *Staples*, 34 Conn., 316.

Assuming then that she was a purchaser for a valuable consideration, was she also an innocent purchaser—a pur-

chaser in good faith—within the meaning of the rule invoked in her favor? We think not. The court below has indeed found that in all this scheme on the part of Mr. Hewitt to defraud his creditors, his wife was his ignorant and passive instrument, possessed of no actual knowledge of his insolvency or of his intended fraud, and having no intention herself to perpetrate a fraud. The finding is sufficient to show that she is guiltless of the fraud of her husband in a moral sense; but if he acted as her agent to a certain extent in this matter, then in a legal sense, and for civil purposes, the case is quite different. In that case, and in so far as he was her agent or acted as her agent, his objects and purposes became hers, his knowledge hers, and to a limited extent his frauds became her frauds. Thus in *Warner* v. *Warren*, 46 N. Y., 228, the knowledge and fraudulent purpose of the husband as agent of the morally innocent wife, were held to be legally her knowledge and her fraudulent purpose. In *Smith* v. *Board of Water Com'rs*, 38 Conn., 208, it is said that: "Principals are always presumed to have knowledge of all the acts done or declarations made by or to their agents, when acting in relation to the subject-matter of the agency, and within the scope of an actual or apparent authority conferred upon them." In *Bank of New Milford* v. *Town of New Milford*, 36 Conn., 101, the knowledge of the fraud possessed by the agent of the bank was held to be the knowledge of the bank; in *Willard* v. *Buckingham*, 36 Conn., 395, the knowledge of the general agent of those having charge of the railroad was held to be their knowledge; in *O'Connell* v. *Kilpatrick*, 64 Md., 122, it was held that the agent's knowledge of the seller's intent to defraud creditors was the knowledge of his principal who purchased without actual knowledge of such intent; and in *Clark* v. *Fuller*, 39 Conn., 238, the knowledge of the fraud possessed by the husband as agent of the innocent wife was held to be her knowledge of the grantor's intent to defraud his creditors. Nor does it make any difference in the application of this principle that the agent and the grantor are one and the same person. Thus in *Marjoribanks* v. *Hovenden*, 6 Ir. Eq., 238, an attorney at

law, the owner of a certain interest in land, mortgaged it to secure a debt. The mortgage was not duly registered and the attorney, some eighteen months after the execution of the first mortgage, mortgaged the same property to another person, who had no knowledge of the existence of the first mortgage. The second mortgage was duly registered, but the second mortgagee had employed the mortgagor as his attorney in the transaction ; and it was held that the knowledge of the attorney of the existence of the first mortgage, was legally the knowledge of his principal, the second mortgagee. The court says in that case : " The question arose in *Sheldon* v. *Cox*, Ambler, 624, whether there was any distinction where the agent was also the owner of the property, and it was held there was no distinction in such a case. The question in every case is not whether the agent had any interest, but whether he had any notice of the incumbrance ; and it is quite clear, that if a man employs a solicitor, who is also the owner of the property, he is as much bound by the knowledge of that solicitor, as if he had employed one who had no interest whatever in it." *Atkins* v. *Delmege*, 12 Ir. Eq., 1, is to the same effect.

In all that Mr. Hewitt did in this matter after he delivered the deeds of his interest in these lands to Ford and Hooper, he was acting not as grantor but as agent for his wife ; as such he requested Ford and Hooper to convey the interest they had thus acquired in the lands to her; as such he received the deeds from them and as such he put them upon record. It is true that the aforesaid acts were when done, done without her knowledge or consent; but she subsequently fully ratified them by accepting and retaining the benefit of them. " An act done, for another, by a person, not assuming to act for himself, but for such other person, though without any precedent authority whatever, becomes the act of the principal, if subsequently ratified by him. . . . In that case the principal is bound by the act, whether it be for his detriment or advantage, and whether it be in tort or contract." *Wilson* v. *Tumman*, 6 M. & G., 236. In such cases an express ratification is not necessary. As a

general rule " if the principal receives and retains the proceeds of the agent's fraud—the property, money, and the like obtained through an executed transaction—or claims the benefit of, or attempts to enforce, an executory obligation thus procured, he renders himself liable for the fraudulent acts of his agent."   Pom. Eq. Juris., 1st. Ed., Vol. II., § 909 ; *Bank of New Milford* v. *Town of New Milford, supra.* The agent of Mrs. Hewitt, then, at the time these conveyances were made to her, and while acting for her, had full and complete knowledge of the insolvency of Mr. Hewitt and of his intent to defraud his creditors, and her agent actually aided and assisted Mr. Hewitt in the accomplishment of his fraudulent designs.   It is only by assuming that Mrs. Hewitt was a mere automaton in respect to such designs, that she can be excused morally from the guilt of participation therein.   Legally she cannot be excused.

There is no error.

In this opinion the other judges concurred.