## International Brotherhood of Electrical Workers Local 35 v. Commission on Civil Rights of the State of Connecticut

Baldwin, Inglis, O'Sullivan, Quinlan and Wynne, Js.

Argued October 14—decided December 29, 1953

*Harold Strauch,* for the appellant (plaintiff).

*Raymond J. Cannon,* assistant attorney general, with whom, on the brief, was *William L. Beers,* attorney general, for the appellee (defendant).

QUINLAN, J. This proceeding arose out of a complaint by Mansfield T. Tilley to the commission on civil rights of the state of Connecticut in which he alleged a violation of the Fair Employment Prac-

tices Act[1] by reason of his exclusion from membership, because of his race, in Local 35, International Brotherhood of Electrical Workers, hereinafter referred to as the plaintiff. The hearing tribunal to which the chairman of the commission referred the matter pursuant to § 7406 of the General Statutes found against the plaintiff and made the order quoted in the footnote.[2] The plaintiff appealed to the Superior Court, which dismissed the appeal. From that judgment the plaintiff has appealed to this court.

The following is a summary of the salient facts found by the hearing tribunal: On April 1, 1949, the plaintiff received an application from Mansfield T. Tilley, a thirty-year-old Negro, for admission into the union as an apprentice. On the previous day Tilley had talked to Francis Devine, the plaintiff's business manager, who told him that his contemplated application was almost hopeless because of the large number of applicants. At that time, there was no discussion of qualifications for membership or of Tilley's age and training. On April 8, 1949, Tilley and Rogers, a Negro member of the postal clerks'

[1] "Sec. 7405. UNFAIR EMPLOYMENT PRACTICES. It shall be an unfair employment practice . . . (c) for a labor organization, because of the race, color, religious creed, national origin or ancestry of any individual to exclude from full membership rights or to expel from its membership such individual or to discriminate in any way against any of its members or against any employer or any individual employed by an employer, unless such action is based upon a bona fide occupational qualification . . . ."

[2] "1. In the event that Mansfield T. Tilley . . . presents himself for admission to membership, you are hereby ordered to cease and desist from excluding him from full membership rights because of his race.

.  .  .  .  .

"3. You are hereby ordered to cease and desist from failing or refusing to act, both by your executive board and by your membership, upon the application of Mansfield T. Tilley . . . ."

union, met with the executive board of the plaintiff and were shown a bundle of cards said to be applications for admission. They were also told that all unemployed members had to be put to work before new members were admitted and that in any event Tilley's application would have to be submitted to a vote of the entire union. Tilley had no further contact with the plaintiff; it took no action on his application and failed to notify him of its inaction.

Tilley was a graduate of Hartford Public High School and had been top man in a class at a navy school to which he had been sent to study electricity. While in the naval service he worked on electric motor repairs and maintenance. Upon discharge he had been admitted to the Hartford Trade School and completed courses in electric wiring and motor repair. He was qualified to be accepted by the union. An investigator for the commission on civil rights interviewed Devine in July, 1950. The latter emphasized the desirability of limiting members to insure steady employment. Later, the investigator was shown a list of admissions for the four years preceding, but it was explained that the authority for accepting members rested in the total membership. Devine remarked that dates were not significant because nearly all new members were sons or other relatives of members and that those who thought they could obtain more work by joining the union were deluding themselves. He stated that there were no Negroes in the union, that the carpenters' union found Negroes irritating and not good mechanics, and that it was his desire to maintain strict standards.

On two other occasions, in 1946 and 1948, Negroes were denied membership because of their race. One of them, Silas Hill, just prior to the execution of a

union shop contract by his employer was transferred from outside electrical work to inside janitorial work for no apparent reason apart from a desire not to embarrass the union because of his being a Negro. This man contacted Dr. James Gladstone, who called Devine and was told the man would have received a work permit except for his race. At a conference later held on the case nobody suggested that the man was unsatisfactory in his work. He was never admitted to the union. One of the reasons assigned for his transfer by his employer was that work was slack, although at that time the employer was advertising for electricians.

After April 1, 1949, Robert T. Preston was admitted on an application dated February 28, 1948. Carmen F. Calbi, Jr., although not employed, was admitted July 28, 1950, upon an application dated May 24, 1950. The plaintiff operates as a clearing house for employment. Union electricians earn higher wages than nonunion electricians.

The plaintiff's brief states the principal issues to be: (1) Was the complaint filed with the commission on civil rights by the complainant, Mansfield T. Tilley, barred by the six-month period of limitations imposed by § 7406 of the General Statutes? (2) Were the findings of the hearing tribunal, and its conclusion that the plaintiff discriminated against Mansfield T. Tilley in violation of § 7405 of the General Statutes, supported by substantial and competent evidence, as is required by § 7407?

As relevant to these issues, the plaintiff presses its claim that the trial court erred in refusing to strike out 30 of the 114 paragraphs of the finding made by the hearing tribunal and to add 52 paragraphs thereto. Section 7407 of the General Statutes provides that "[t]he findings of the hearing tribunal

as to the facts, if supported by substantial and competent evidence, shall be conclusive." Before an attempt is made to define the meaning of the term "substantial and competent evidence," enlightenment may be had from a consideration of the reasons for fixing any standard of evidence in the act. In *Universal Camera Corporation* v. *National Labor Relations Board,* 340 U.S. 474, 71 S. Ct. 456, 95 L. Ed. 456, wherein reference is made to the Administrative Procedure Act (60 Stat. 237, 5 U.S.C. § 1001) and the Taft-Hartley Act (61 Stat. 136, 29 U.S.C. § 141 [Sup. 5, 1952]), the court said (p. 488): "Congress has merely made it clear that a reviewing court is not barred from setting aside a Board decision when it cannot conscientiously find that the evidence supporting that decision is substantial, when viewed in the light that the record in its entirety furnishes, including the body of evidence opposed to the Board's view." The purpose was to meet criticisms directed at findings of administrative boards based upon a mere scintilla of evidence.

Before the hearing tribunal in the present case there were several witnesses on each side of the controversy. It is apparent that the tribunal did not give credit to the testimony of some of the plaintiff's witnesses. From the direct evidence introduced, the tribunal was entitled to draw reasonable inferences. In this state, in civil cases, an inference need not be so conclusive as to exclude every other hypothesis. The test is whether the evidence, fairly and impartially considered, is likely to induce in the minds of men of ordinary intelligence, attentively considering it and using common-sense logic, a reasonable belief that it is more probable than otherwise that the fact in issue is true. *LeBlanc* v. *Grillo,* 129 Conn. 378, 382, 28 A.2d 127; *Foster* v. *Hartford Buick Co.,* 131 Conn.

348, 351, 39 A.2d 884. The case in its very nature concerned intent and motive. "[S]o long as the conduct of men is allowed to throw light upon their motives of action, so long such evidence is most proper to go to the jury, when those motives are the subject of inquiry." *Luckey* v. *Roberts,* 25 Conn. 486, 492; *F. W. Woolworth Co.* v. *National Labor Relations Board,* 121 F.2d 658, 660. A question of intent is a question of fact, the determination of which is not reviewable unless the conclusion drawn by the trier is one which cannot reasonably be reached. *Meriden Trust & Safe Deposit Co.* v. *Miller,* 88 Conn. 157, 162, 90 A. 228; *McDermott* v. *McDermott,* 97 Conn. 31, 35, 115 A. 638. The motive with which an act is done may often be inferred from proof of facts and circumstances connected with the transaction. *Winestine* v. *Rose Cloak & Suit Co.,* 93 Conn. 633, 636, 107 A. 500; *Sallies* v. *Johnson,* 85 Conn. 77, 81, 81 A. 974.

The only Connecticut case where the language of § 7407 has been construed is *Draper* v. *Clark Dairy, Inc.,* 17 Conn. Sup. 93. There the trial court (p. 99) construed the words "substantial and competent evidence" as meaning that the question presented by the finding should be tested on appeal by such well-established principles of evidence as are referred to above, and stated that a "conclusion reached by inference could not be said to be 'supported by substantial and competent evidence' unless the inference satisfied those tests." Evidence is admitted not because it is shown to be competent but because it is not shown to be incompetent. *Plumb* v. *Curtis,* 66 Conn. 154, 166, 33 A. 998. Enough has been said to demonstrate that more than a scintilla of evidence, or evidence that creates a suspicion, is required. *National Labor Relations Board* v. *Columbian Enameling & Stamping Co.,* 306 U.S. 292, 300, 59

S. Ct. 501, 83 L. Ed. 660. The standard of proof required by the rule demands that the evidence be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from the evidence is one of fact for the jury. *Johnson* v. *Pulidy,* 116 Conn. 443, 445, 165 A. 355. Having in mind the statutory requirement of competent and substantial evidence, we are satisfied that the trial court's refusal to correct the finding of the hearing tribunal was correct in every particular.

The claims of the plaintiff rely to a considerable extent upon its so-called union policies. It claimed that it was part of its policy to require an applicant for admission to membership to be young and already employed. The plaintiff's constitution, however, is in conflict with these policies. Article 17, § 7, provides: "[Local unions] are empowered to make their own bylaws and working rules, but these shall in no way conflict with this Constitution. Where any doubt appears, this Constitution shall be supreme." In the same article, § 9 reads: "All [local union] bylaws or rules in conflict with this Constitution, and the rules herein, are null and void." Article 21, § 1, provides: "Any electrical worker or employee of good character, not less than 16 years of age, is eligible to membership, provided he passes a satisfactory examination when required to do so by the [local union]." Long-continued practice and custom, except where a doubtful meaning is involved, cannot and does not supersede the constitution and by-laws. *Coughlin* v. *Knights of Columbus,* 79 Conn. 218, 227, 64 A. 223.

Not only may we not interfere with the discretion exercised by the hearing tribunal but we are concluded by its findings provided they are supported

by the evidence in accord with the standard of proof fixed by the statute. Nor can we hold that the defendant acted illegally, arbitrarily, or so unreasonably as to abuse its discretion, and that is the test of the extent of our function upon review of an order of an administrative tribunal. *Gunther* v. *Board of Zoning Appeals,* 136 Conn. 303, 306, 71 A.2d 91; *Berkman* v. *Board of Appeals,* 135 Conn. 393, 398, 64 A.2d 875. On the facts found, the conclusion of the hearing tribunal that Tilley was excluded from membership in the union because of his race and therefore in violation of § 7405 (c) must stand.

Throughout the proceedings the plaintiff has maintained that any alleged acts of discrimination were barred by General Statutes, § 7406, which provides that a complaint must be filed within six months after the alleged act of discrimination. Tilley filed his application for admission to the union on April 1, 1949. His complaint was filed July 1, 1950. More than six months elapsed between these dates. At no time, however, did the plaintiff act upon the application or notify Tilley of any action. Its contention is based on article 22, § 6, of the plaintiff's constitution, wherein it is provided that admission must be completed within ninety days. Inasmuch as there was no express rejection, the six months would not begin to run until the expiration of the period within which it could be reasonably expected that the plaintiff would have acted upon the application. In view of the representations made by the plaintiff to Tilley concerning the number of applications pending ahead of his and the shortage of work, it is estopped, as concluded by the hearing tribunal, from claiming that its discriminatory act occurred prior to April 1, 1950. It is to be observed that the constitution contains no provision that an

application shall cease to be pending at the end of ninety days. In practice, apprentices customarily waited a year before being admitted into the union, without filing a new application. We conclude that the prosecution of the union for its discriminatory act was not barred by the statute.

Exception was taken to the admission before the hearing tribunal of the testimony of Silas Hill as to the plaintiff's having discriminated against him in 1946, particularly because it related to incidents before the enactment of the Fair Employment Practices Act. Administrative agencies are not bound by the strict rules of evidence. *Adam* v. *Connecticut Medical Examining Board,* 137 Conn. 535, 540, 79 A.2d 350; *New Milford Water Co.* v. *Watson,* 75 Conn. 237, 247, 52 A. 947. "Upon questions of *knowledge, good faith* or *intent,* any other transactions from which any inference respecting the *quo animo* may be drawn are admissible. . . . It has sometimes been thought that the other transactions should be cotemporaneous, or nearly so, but that is not essential." *Hoxie* v. *Home Ins. Co.,* 32 Conn. 21, 37; *Knower* v. *Cadden Clothing Co.,* 57 Conn. 202, 222, 17 A. 580; *Trumbull* v. *Hewitt,* 65 Conn. 60, 68, 31 A. 492; *National Labor Relations Board* v. *McLain Fire Brick Co.,* 128 F.2d 393, 394; see *Patton* v. *Mississippi,* 332 U.S. 463, 466, 68 S. Ct. 184, 92 L. Ed. 76. Even if the strict rules of evidence were applicable, there was in this instance, as well as in the one to be mentioned, no error in the ruling complained of.

Error also was predicated upon the admission of a telephone conversation between Dr. Gladstone and the business manager of the local. The fact that the voice of the business manager was not identified does not render the conversation inadmissible. *General Hospital Society* v. *New Haven Rendering Co.,* 79

Conn. 581, 582, 65 A. 1065; *Godair* v. *Ham National Bank,* 225 Ill. 572, 575, 80 N.E. 407. A sufficient foundation is laid when the subject matter of the conversation, evidence of its occurrence, and prior and subsequent conduct of the parties fairly establish the identity of the person with whom conversation occurred. *Merchants National Bank* v. *State Bank,* 172 Minn. 24, 31, 214 N.W. 750; *Collins* v. *Lewis,* 111 Conn. 299, 305, 149 A. 668. The evidence was properly admitted.

There is no error.

In this opinion the other judges concurred.