RELIANCE INSURANCE COMPANY *v.* COMMISSION ON HUMAN RIGHTS AND OPPORTUNITIES

HOUSE, C. J., LOISELLE, BOGDANSKI, LONGO and BARBER, Js.

Argued December 10, 1976—decision released March 1, 1977

*Richard J. Lynch,* assistant attorney general, with whom were, on the brief, *Carl R. Ajello,* attorney general, and *Bernard F. McGovern, Jr.,* assistant attorney general, for the appellant (defendant).

*J. Read Murphy,* with whom was *Russell N. Fairbanks, Jr.,* for the appellee (plaintiff).

BOGDANSKI, J. This is an appeal by the commission on human rights and opportunities from a judgment of the Court of Common Pleas which set aside a hearing examiner's decision that the plaintiff had unlawfully discriminated against the complainant, a black person, in its hiring practice. The commission claims that the court erred (1) in concluding that there was insufficient evidence to find an act of discrimination and (2) in substituting its judgment for that of the hearing examiner.

The following facts were found by the hearing examiner: On January 16, 1974, the Reliance Insurance Company, through Stephen Swanston, its local claims manager, placed an advertisement in the New Haven Register for a claims service repre-

sentative.[1] The position advertised involved telephone contact almost exclusively with the general public, principally with policyholders and persons having property or personal injury claims against policyholders, as well as with witnesses, doctors and attorneys. The complainant, Miss Brooker, responded to this advertisement by telephoning Swanston. After the telephone conversation, Swanston invited her to a personal interview. At the time she was granted the interview, Swanston did not know her race. The initial telephone responses to the advertisement were utilized to screen out about one-half of all applicants. The rest were invited to an interview to determine skill in communication and persuasiveness—especially over the telephone. Miss Brooker's interview lasted fifteen to twenty minutes. After that interview, Swanston decided not to give her application further consideration in the absence of any "exceptionally promising information" that she could insert into an employment application with a personal letter stating why she wanted the position. At that time, Swanston, the only one who interviewed applicants, had selected three of the eventual four finalists. Three other members of racial minorities applied for the position, none of whom was among the four finalists. At that time, no members of racial minorities were employed at the plaintiff's claims office. Miss Brooker's qualifications for

---

[1] "INSURANCE If you are looking for an interesting and challenging position with future potential, we offer you an opportunity to train as a Claims Service Representative with one of America's largest and fastest growing property and casualty companies. Applicants must be college graduates, responsible, personable and enjoy talking to people on the phone. If this appeals to you, apply in person or telephone S. W. Swanston, Claims Manager — 795-0295, Reliance Insurance Co., 477 Boston Post Road, Orange, an equal opportunity employer."

the position were not less than those of the four finalists, based on a comparison of the written applications. One of the four finalists did not appear to satisfy the requirement of a college degree. The prior experience of Miss Brooker in the insurance industry was not given even limited value by Swanston. The prior experience of another applicant applying to fill a different vacancy for the same position in the same office at about the same time was given value by Swanston. The speech of Miss Brooker did not reveal an accent which would have reduced her ability to communicate by phone or in person. Had there been an objectionable accent, Swanston would have detected it from the telephone conversation. Miss Brooker's overweight does not prevent her from performing the activities required by the position.

The hearing examiner then concluded that "from the evidence presented in this case, the demeanor and credibility of the witnesses, and the compelling inferences arising therefrom, it follows that the rejection of the Complainant . . . was in violation of Conn. Gen. Stat. § 31-126 as amended." Section 31-126 (a) provides in part that it shall be an unfair employment practice "[f]or an employer, . . . because of the . . . color . . . of any individual, to refuse to hire or employ . . . such individual."

Racial discrimination is an intangible and for the most part can be established only through inference. It is not a packaged item which carries a label describing its contents, which may be exposed to public view. It is essentially subjective, with its roots and symptons buried within the recesses of heart and mind. One who indulges in discrimination does not usually shout it from the housetops. All

too frequently persons publicly announce abhorrence of racial prejudice while privately practicing it. In this type of proceeding, therefore, greater latitude is accorded the tribunal to draw inferences from words and deeds than in cases where overt acts need be established. *International Brotherhood* v. *Commission on Civil Rights,* 18 Conn. Sup. 125, 130, aff'd, 140 Conn. 537, 102 A.2d 366; *F. W. Woolworth Co.* v. *National Labor Relations Board,* 121 F.2d 658, 660 (2d Cir.).

The trial court concluded that the latitude taken by the examiner in drawing his inference of racial prejudice went too far, and that without disturbing any of his findings of fact it was evident that his ultimate determination of qualification for this job required something more than simple analysis of an application; it required a personal evaluation of the applicant through interview.

We agree. The examiner relied solely upon a comparison of Miss Brooker's application with those of the other finalists in reaching his conclusion that she was not less qualified than the other applicants. He did not, however, interview any of the applicants other than Miss Brooker. In view of the nature of this employment, and the lack of adequate records of the interviews, the examiner should have interviewed the person ultimately selected for the position or one of the other finalists in order to make a complete and adequate comparison.

The inference to be drawn must be one which in common experience leads naturally and logically to the fact inferred or presumed. In the mind of the trier, the proof of one must produce the belief that it is more probable than not that the other, the

ultimate fact, is thereby established. But where the inference is so strained as not to have such a reasonable relation, it cannot be drawn. *Ducharme* v. *Putnam,* 161 Conn. 135, 141, 285 A.2d 318; *International Brotherhood* v. *Commission on Civil Rights,* 140 Conn. 537, 542, 102 A.2d 366. Inferences, however, should not be founded on facts merely surmised. *State* v. *Englehart,* 158 Conn. 117, 121, 256 A.2d 231. This is especially so where inferences are utilized to overcome direct and positive testimony.[2] *National Labor Relations Board* v. *P. R. Mallory & Co.,* 237 F.2d 437, 444 (7th Cir.). The test is whether the evidence removes the conclusion from an area of speculation, and is not only logical and reasonable, but strong enough so that it can be found that it is more probable than not that the fact to be inferred is true. *Ducharme* v. *Putnam,* supra; *Hennessey* v. *Hennessey,* 145 Conn. 211, 214, 140 A.2d 473.

To support a finding of racial discrimination by inference, where a number of applicants apply for one position, it should be shown that the minority applicant was at least as well qualified

---

[2] Stephen Swanston gave testimony to the following effect: Miss Brooker did not meet the standards for the position. She was withdrawn and did not converse freely. She "didn't speak enough to give me the impression that she was the sort of person I was looking for. She was very quiet." He needed someone not affected by the pressures of a situation; he was not impressed and was not likely to offer her the job when she did call back. "[T]he four semifinalists were decidedly more qualified and more attractive as prospective employees." Miss Lott, the person ultimately selected for the position, impressed him as having more interest in the job than Miss Brooker did. In seeking a claims service representative he looked for people who were interested in things, who talked to the interviewer about the company and its ethics and practices, and wanted additional information with regard to the position. Miss Brooker had "difficulty expressing her thoughts. Her communication skills were not extraordinary, not remarkable."

as the other applicants based on an evaluation of all the qualifications necessary for the position. A personal interview is particularly important for ultimate job selection in today's complex and demanding economy where not only the education, training and experience count, but where personality, motivation, articulation, the ability to withstand pressure, and communicative ability must also be considered as essential criteria. It is a fact of life that those latter subjective elements can only be ascertained through a personal interview.

Conclusions are tested by the finding and all reasonable inferences that may be drawn therefrom. *Ross* v. *Ross,* 172 Conn. 269, 275, 374 A.2d 185; *Brauer* v. *Freccia,* 159 Conn. 289, 293, 268 A.2d 645; *Grodzicki* v. *Grodzicki,* 154 Conn. 456, 460, 226 A.2d 656. They cannot stand when they are legally or logically inconsistent with the facts found or involve the application of some erroneous rule of law material to the case. *Craig* v. *Dunleavy,* 154 Conn. 100, 105, 221 A.2d 855.

In the present case, the finding of the trial court that the examiner's conclusion of racial prejudice was based solely on inference and was not warranted by the record cannot be disturbed.

There is no error.

In this opinion the other judges concurred.