COMMISSION ON HUMAN RIGHTS AND OPPORTUNITIES OF THE STATE OF CONNECTICUT *v.* ANNA MARIA CARBONE

CIRCUIT COURT                    FIFTEENTH CIRCUIT
FILE No. CV 15-706-16029

Memorandum filed July 7, 1970

*Robert K. Killian,* attorney general, and *C. Michael Budlong,* assistant attorney general, for the plaintiff.

*Anthony J. Monterosso,* of New Britain, for the defendant.

BIELUCH, J.   This is an action instituted by the plaintiff alleging that the defendant, Mrs. Carbone, discriminated against Mrs. Jose (Rosita) Otero, because of her Puerto Rican ancestry, in the rental of an apartment unit in violation of § 53-35 of the General Statutes.  Pursuant to § 53-36a, the plaintiff sought to have the defendant temporarily and permanently enjoined from renting the apartment unit to anyone other than the complainant, Mrs. Otero. The court granted the temporary injunction after a hearing and must now consider the request for a permanent injunction within seven days after the completion of the hearing.   General Statutes § 53-36b.

The defendant is the sole owner of a six-family apartment house located at 90 Talcott Street, New Britain.  Since about March 15, 1970, she has rented three apartments to tenants of Puerto Rican ancestry.  One such tenant is Mrs. Anselma Vega, known to Mrs. Otero.  On or about June 1, 1970, Mrs. Vega advised the defendant of her intention to vacate her apartment at the end of her next full month's tenancy on July 10, 1970, and to sell her furniture before then.

Mrs. Otero, of Puerto Rican ancestry, has been a resident of New Britain for fourteen years.  She is a graduate of New Britain High School and has attended Central Connecticut State College.  She and her husband, a Vietnam veteran, presently reside

in a three-room apartment. Because of her pregnancy, she is seeking a four-room apartment in anticipation of the increase in her family. She does not own her own furniture.

On June 5, 1970, Mrs. Otero called Mrs. Carbone from Mrs. Vega's apartment after expressing to Mrs. Vega her desire to purchase the furniture and to rent the apartment. Mrs. Carbone's first inquiry of Mrs. Otero was about her nationality. Upon being advised, Mrs. Carbone narrated her complaints about her Puerto Rican tenants. Sensing discrimination, Mrs. Otero in a point-blank manner asked Mrs. Carbone if she was refusing to rent the apartment to Mrs. Otero because she was Puerto Rican. Mrs. Carbone gave a direct "Yes" answer, and the conversation ended abruptly. Subsequently that weekend, Mrs. Vega interceded in behalf of Mrs. Otero with the defendant, who agreed to see Mrs. Otero on the following Monday. This visit with the defendant took place on June 8, 1970, in the presence of Mrs. Vega and an elderly lady friend of the defendant. Mrs. Carbone inquired about the residence and employment of the Oteros, and this was furnished in writing. Although Mrs. Carbone did at that time express complaint about her Puerto Rican tenants, she also discussed rental terms for the apartment with Mrs. Otero. She specified that the monthly rent would be $85, less a $5 allowance if the Oteros, in particular Mr. Otero, would carry the rubbish cans to the street for collection. Upon the acceptance of this arrangement by Mrs. Otero, Mrs. Carbone advised that she wanted to see her lawyer to incorporate this into an agreement. Mrs. Otero volunteered to call Mrs. Carbone about this, which she did two days later. On that day, Mrs. Otero was informed that Mrs. Carbone could not reach her lawyer. When Mrs. Otero called again on the following day, June 11, 1970, Mrs. Carbone

still had not contacted her lawyer. At this time Mrs. Otero first suggested that the parties make their own contract, which Mrs. Carbone refused to do. To meet Mrs. Carbone's insistence upon legal assistance, Mrs. Otero then recommended legal aid services, and this also was unacceptable. Finally, Mrs. Carbone stated that Mrs. Vega was not going to move after all, and that finished the immediate conversation. Mrs. Otero, however, called Mrs. Vega the same day. She not only verified Mrs. Vega's move but also discovered that two men had been to see the apartment the day before. Following this information, Mrs. Otero telephoned Mrs. Carbone again, but Mrs. Carbone refused to talk and hung up the telephone. That ended the complainant's direct contact with the defendant.

On June 15, 1970, Mrs. Otero filed her complaint of discrimination by affidavit with the plaintiff. James Noonan, the plaintiff's field representative, immediately undertook its investigation. He called the defendant and saw her that same day. After allowing the defendant to read the complaint, Noonan explained the purpose of his investigation. Mrs. Carbone repeatedly complained about her Puerto Rican tenants. Upon being informed by the defendant that people other than Mrs. Otero wanted the apartment, Noonan failed to get their identity for verification because the defendant allegedly did not keep their names. When he pursued this point, she requested his departure and returned his papers to him. Two days later, on June 17, Noonan once again visited Mrs. Carbone about this alleged discrimination. She once more enumerated her complaints about her Puerto Rican tenants. Her refusal to rent the apartment to Mrs. Otero became apparent. On the one hand, she denied any vacancy, while on the other she claimed that there were three or four prior applicants, and these she was unable to iden-

tify. Her son was called into this conversation by her, but he hindered, rather than helped, any conciliation of the complaint. With the suggestion that the defendant contact Mrs. Otero, Noonan gave the defendant a copy of the complaint with the pertinent law, his business card and Mrs. Otero's telephone number and departed. Conciliation having failed, the matter was brought to court by petition of the plaintiff.

On June 15, 1970, coincidentally with the filing of the complaint by Mrs. Otero and its initial investigation by Noonan, a vacancy occurred in an apartment, across the hall from Mrs. Vega's apartment, previously occupied by a Puerto Rican family. On the following day, this apartment was rented on its first inspection by nonPuerto Ricans without having been offered to Mrs. Otero. Mrs. Carbone's explanation for not offering this apartment to Mrs. Otero was that the latter wanted a four-room apartment, and not the five rooms available in this apartment, and wished to buy the furniture with the apartment, and furniture was not available in this rental. The tenants who rented this apartment have now indicated to the defendant that they plan to move.

The defendant denies ever telling the complainant that she would not rent the apartment to her and alleges that the decision on the rental would be made when the apartment ultimately became vacant. She now further claims for the first time that early in the year she received a letter from the New Britain building department requiring repairs to be made to all apartments in the premises, repairs she allegedly intends to make when the premises are vacant and the plumber and electrician are available. This order was not produced in court and, in any event, was not considered in the rental of the adjacent apartment unit on June 16, 1970. It is now Mrs.

Carbone's stated intention not to rent the Vega apartment until it is available after the requested repairs. Furthermore, the property has allegedly been placed on the market for sale and has been given to several real estate brokers for that purpose. Prospective buyers have inspected the premises. In fact, the aforementioned inspection of Mrs. Vega's apartment on June 10, 1970, by two men was made in connection with a prospective sale of the premises, and not a tenancy of the apartment. It should be noted that Mrs. Vega overheard Mrs. Carbone at this time tell these men that she disliked Puerto Rican people in her house.

On the basis of the aforementioned facts, the court issued a temporary injunction restraining the defendant from making available the Vega apartment or any other apartment unit that may be vacant on the defendant's premises to anyone other than the complainant.

We are here faced with a matter of great importance to the parties and the citizens of our state. An allegation of discrimination is a serious charge and one that warrants the utmost attention and consideration of the court. The statutory provisions specifying the procedure and respective rights in this matter emphasize the great concern of our legislature for the civil and property rights of all persons. The court expresses equal concern.

Discrimination presents a peculiar difficulty of proof. One might say it is easy to see but hard to show. Its two-faced nature is very descriptively expressed in *International Brotherhood* v. *Commission on Civil Rights,* 18 Conn. Sup. 125, 130: "Racial prejudice or discrimination is intangible and elusive and can be established only through inference. It is not a packaged item which carries a label describing its contents, which may be exposed to public view

by analysis. It is essentially subjective in character, with its roots and symptoms buried within the recesses of heart and mind. One who indulges in discrimination does not shout it from the house tops. He does not make a public announcement expressly stating his attitude or objectives. In fact he conceals his true feelings by publicly announcing contrary views. All too frequently persons publicly announce abhorrence of racial prejudice while privately practicing it. For this reason, in this type of proceeding, greater latitude is accorded the tribunal to draw inferences from words or deeds than in cases where overt acts need to be established. *F. W. Woolworth Co.* v. *National Labor Relations Board,* 121 F.2d 658, 660."

The sum total of the facts found by the court point inescapably to the conclusion that the defendant has violated § 53-35 of the General Statutes by discriminating against Mrs. Jose Otero in the rental of the Vega apartment at 90 Talcott Street, New Britain, because of her national origin and ancestry.

Accordingly, judgment may enter for the plaintiff, and the permanent injunction requested under § 53-36a is granted.[1]

---

[1] On August 28, 1970, the above injunction was dissolved by agreement of the parties on full compliance of the defendant with the terms of the subject statute, and the leasing of the premises to the complainant.